```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------x

 IRENE D. MARESCA,

                     Plaintiff,              MEMORANDUM & ORDER
                                              22-CV-6636(EK)(MMH)
         -against-

 RICHMOND UNIVERSITY MEDICAL CENTER,

                     Defendant.
-------------------------------------x
```
ERIC KOMITEE, United States District Judge:

Irene Maresca worked as a registered nurse at Richmond University Medical Center in Staten Island. She was terminated in 2021 for refusing to comply with the New York State Department of Health's vaccine mandate. She brought this action thereafter, alleging that her termination was motivated by religious discrimination in violation of Title VII of the Civil Rights Act of 1964.

The Medical Center has now moved to dismiss the suit for failure to state a claim. Because Maresca does not plausibly allege a claim for employment discrimination, hostile work environment, or retaliation, the motion to dismiss is granted.

I.  Background

Maresca is proceeding *pro se*. The following facts are taken from the amended complaint and assumed to be true. The

Court also takes notice of certain exhibits attached to the complaint and documents from official government websites. *See Hayden v. County of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999); *Vill. Green at Sayville, LLC v. Town of Islip*, 43 F.4th 287, 299 n.7 (2d Cir. 2022); *Marciano v. de Blasio*, 589 F. Supp. 3d 423, 427 n.5 (S.D.N.Y. 2022) (taking judicial notice of state guidelines).

In August 2021, the New York State Department of Health issued a COVID-19 vaccine mandate ("the Mandate"), directing healthcare facilities to require certain personnel to be vaccinated against COVID-19 by September 27, 2021. N.Y. Comp. Codes R. & Regs. tit. 10, § 2.61 (Aug. 26, 2021). The Mandate has since ended. *See id.* (Oct. 4, 2023). While effective, it extended to hospital employees "who engage in activities such that if they were infected with COVID-19, they could potentially expose other covered personnel, patients or residents to the disease." *Id.* (Aug. 26, 2021).

The Mandate allowed a medical exemption to the vaccination requirement but no religious exemption. *See id.* § 2.61(d)(1). Soon after it went into effect, the New York State Department of Labor indicated that employees terminated for non-compliance would be ineligible for unemployment benefits absent a valid request for accommodation. *See* N.Y. State Dep't

of Health, *Unemployment Insurance Top Frequently Asked Questions* (Sep. 25, 2021) (hereinafter "*Unemployment Insurance FAQs*").[1]

In line with the Mandate, the Medical Center ("RUMC") implemented a COVID-19 vaccine policy. Am. Compl. 1, 6, ECF No. 13.[2] As a Registered Nurse in RUMC's Intensive Care Unit, Maresca was covered. *See id*. at 1. She submitted an "official request" for a religious exemption on September 5, 2021. *Id.* at 6. Maresca wrote that her "devout Catholic and Christian" faith prevented her from receiving a vaccine developed with "aborted fetal cells." *Id*. at 23. Additionally, Maresca alleged that she had COVID-19 antibodies from a prior infection that (in her assessment) obviated any need to be vaccinated. *Id.* at 6. The hospital did not react positively: among other things, in a meeting with hospital administrators and staff, a Human Resources official told Maresca that she "should be fine with the vaccine as [her] pope OK'd it." *Id*.

RUMC's Human Resources department required Maresca to submit an additional questionnaire regarding her requested religious exemption, which she did on October 12, 2021. *See id.* at 6-7. Maresca alleges that it was humiliating to fill out the questionnaire. *Id.* at 7. Nevertheless, she wrote that: "[a]bortion is immoral in God's eyes and in my eyes. Anything

---

[1] This guidance is available at https://perma.cc/Y4LL-KKFR.
[2] All complaint page numbers refer to ECF pagination.

3

affiliated with [a]bortion should [not be] used by the vaccine industry . . . . [E]ven though the Pope has given his nod that does not mean that I have to put this vaccine in my body. There are many priests [and] cardinals who also feel as I do." *Id.* at 19.

RUMC denied Maresca's request and, after she continued to refuse the vaccine, terminated her employment in November 2021. *Id.* at 7-8. Maresca alleges that, in addition to terminating her employment, RUMC retaliated against her for seeking the exemption — specifically by locking her out of her e-mail, "not giv[ing] [her] a termination letter," refusing her admission to the building, and refusing to speak with her about her employment. *Id.* at 8-9, 11. Maresca also alleges that after her last day of work, her electronic paycheck was not deposited into her bank account. *Id.* at 8. Instead, Human Resources informed Maresca that she could pick up this paycheck in person after handing in her ID badge. *Id.* at 9. Soon thereafter, the New York State Department of Labor denied Maresca's unemployment-benefits claim, determining that she "quit without good cause," as she had refused a mandatory vaccine. ECF No. 16-4, at 28.[3]

---

[3] Maresca included this document with her complaint filed with the New York State Department of Human Rights ("NYDHR"). RUMC also filed this document alongside its motion to dismiss. Judicial notice is proper, as "in deciding motions to dismiss in discrimination actions, courts regularly take

4

Maresca filed an Equal Employment Opportunity Commission complaint in December 2021 and received a Right to Sue letter on September 27, 2022. Am. Compl. 22. She timely initiated this action thereafter. She brings three claims pursuant to Title VII, 42 U.S.C. § 2000e et seq., alleging religious discrimination, hostile work environment, and retaliation.[4] RUMC has moved to dismiss for failure to state a claim.

## II. Legal Standard

On a motion to dismiss, "the court's task is to assess the legal feasibility of the complaint." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020). In doing so, the court "must take the facts alleged in the complaint as true, drawing all reasonable inferences in [the plaintiff's] favor." *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 91 (2d Cir. 2007). *Pro se* complaints are "held to less stringent standards" than pleadings drafted by attorneys, and the court will read a

---

notice of NYDHR filings and determinations relating to a plaintiff's claim." *Macer v. Bertucci's Corp.*, No. 13-CV-2994, 2013 WL 6235607, at *1 n.1 (E.D.N.Y. Dec. 3, 2013) (collecting cases).

[4] While Maresca has styled the Amended Complaint as asserting six claims, these claims are best understood as the three stated above. Three of her claims allege Title VII religious discrimination, which the Court construes as one claim. *See* Am. Compl. 11-12, 14-15. Another of her claims is denominated as "judicial precedent," which provides additional argument, rather than a legal cause of action. *Id.* at 13. Additionally, although Maresca asserted at the pre-motion conference that she was not pursuing a claim of "harassment," the Court considers that claim as it was raised in the amended complaint. *See id.* at 5, 14; Transcript of Proceedings on Jan. 9, 2023, at 23:23-25, ECF No. 12.

5

*pro se* complaint liberally and interpret it as raising the strongest arguments it suggests. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008).[5]

Still, a *pro se* plaintiff is not exempt from "compliance with relevant rules of procedural and substantive law." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983). Thus, to survive a motion to dismiss, the complaint must plead sufficient "facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim is plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011). Courts "are not bound to accept as true a legal conclusion couched as a factual allegation," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

---

[5] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

## III. Discussion

### A. Religious Discrimination

Title VII prohibits employment discrimination based on religion. 42 U.S.C. § 2000e-2(a)(1). Among other things, this means an employer must "reasonably accommodate" an employee's "religious observance or practice" unless the accommodation would impose "undue hardship on the conduct of the employer's business." *Id.* § 2000e(j). To make out a *prima facie* case of religious discrimination for such a failure to accommodate, a plaintiff must plausibly allege "(1) they held a bona fide religious belief conflicting with an employment requirement; (2) they informed their employer[] of this belief; and (3) they were disciplined for failure to comply with the conflicting employment requirement." *Knight v. Conn. Dep't of Pub. Health*, 275 F.3d 156, 167 (2d Cir. 2001).

In general, if a plaintiff establishes a *prima facie* case of discrimination, "the burden then shifts to the employer to show it could not accommodate the [employee's] religious beliefs without undue hardship." *Id.* An accommodation presents undue hardship if it "would result in substantial increased costs in relation to the conduct of [the employer's] particular business." *Groff v. DeJoy*, 600 U.S. 447, 470 (2023). An accommodation that requires an employer to violate a law is *per*

*se* undue hardship.  *See, e.g.*, *D'Cunha v. Northwell Health Sys.*, No. 23-476, 2023 WL 7986441, at *3 (2d Cir. Nov. 17, 2023).

The dispositive defense appearing on the face of Maresca's complaint — namely, the illegality of the accommodation she sought — requires dismissal.  *See id.* at *2 (undue hardship defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6)); *see Iowa Pub. Emps.' Ret. Sys. v. MF Glob., Ltd.*, 620 F.3d 137, 145 (2d Cir. 2010).  This outcome obtained in *We the Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 292 (2d Cir. 2021), *clarified*, 17 F.4th 368.  There, the panel observed that "Title VII does not require covered entities to provide the accommodation that Plaintiffs prefer — in this case, a blanket religious exemption allowing them to continue working at their current positions unvaccinated."  *Id.* at 292.  Following *We the Patriots*, the Second Circuit went on to uphold the dismissal of at least three vaccination cases in which the religious exemption sought would have unduly burdened employers. *See Russo v. Patchogue-Medford Sch. Dist.*, 129 F.4th 182, 186 (2d Cir. 2025); *Does v. Hochul*, No. 22-2858, 2024 WL 5182675, at *4 (2d Cir. Dec. 20, 2024); *D'Cunha*, 2023 WL 7986441, at *3.

The same outcome obtains here.  As an ICU nurse, Maresca fell under the Mandate's definition of "personnel" who needed to receive COVID-19 vaccination.  N.Y. Comp. Codes R. & Regs. tit. 10, § 2.61(a)(2) (Aug. 26, 2021).  RUMC could not

8

have granted Maresca's requested accommodation without violating state law — an undue hardship by definition.  This action thus joins the "long line of cases in the Southern and Eastern Districts of New York . . . [that] have uniformly rejected claims that an employer is required by Title VII to accommodate a request for a religious exemption from the Mandate at the cost of violating Section 2.61 and thus New York law." *Cagle v. Weill Cornell Med.*, 680 F. Supp. 3d 428, 436 (S.D.N.Y. 2023).

**B.    Hostile Work Environment**

Maresca alleges that "Mr. Musselwhite, head lawyer for HR" condescendingly told her that she "should be fine with the vaccine as [her] pope OK'd it," in response to her question about religious exemptions.  Am. Compl. 6.  She also alleges that it was humiliating to fill out a questionnaire about her religious beliefs following her religious exemption request. *See id.*  Notwithstanding these allegations, Maresca has not plausibly pleaded a hostile work environment.

To prevail on a hostile work environment claim under Title VII, a plaintiff must allege conduct that "(1) is objectively severe or pervasive, that is, creates an environment that a reasonable person would find hostile or abusive; (2) that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's [protected characteristic]." *Patane v. Clark*, 508 F.3d 106, 113

9

(2d Cir. 2007). Harassment is "severe and pervasive" when the workplace is permeated with so much "discriminatory intimidation, ridicule, and insult" as to "alter the conditions of [the victim's] employment and create an abusive working environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65, 67 (1986). At the same time, "offhand comments" and "isolated incidents of offensive conduct (unless extremely serious) will not support a claim of discriminatory harassment." *Petrosino v. Bell Atl.*, 385 F.3d 210, 223 (2d Cir. 2004). Thus, a plaintiff alleging a hostile work environment "must demonstrate either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of [the] working environment." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002).

The instant complaint does not come close to meeting this standard. The "head lawyer" may have exhibited poor taste when he presumed to characterize the Pope's views.[6] But that single comment is insufficiently offensive to meet the "severe or pervasive" prong. Courts have held more frequent and more egregious remarks about religion not to qualify. *See, e.g., Freud v. N.Y.C. Dep't of Educ.*, No. 22-879, 2023 WL 3103588, at

---

[6] The lawyer's comment occurred before Maresca submitted her questionnaire, which indicated that the Pope had "given his nod" to the vaccine. *See* Am. Compl. 6, 19.

10

\*3 (2d Cir. Apr. 27, 2023) (plaintiff's allegations of a supervisor's remarks that "Jews have it made" and asking if Jews "leave early from [their] job[s] on Fridays" established, at most, episodic remarks expressing ignorance and dislike of religious observance rather than a workplace permeated with discrimination); *Chukwueze v. NYCERS*, 891 F. Supp. 2d 443, 455 (S.D.N.Y. 2012) (three instances where plaintiff was "chastised" or "berated" for requesting a religious accommodation were "mere offensive utterance[s]" and were thus neither severe nor pervasive enough to constitute harassment).

Furthermore, Maresca does not plausibly allege that the questions on the accommodation questionnaire were directed at her because of her Catholic and Christian faith. The questionnaire's language makes clear that it was given to all covered personnel who sought a religious exemption. *See* Am. Compl. 19 (RUMC religious accommodation form, stating, "Please identify the religious belief, practice, or observance that is causing you to seek the accommodation . . . ."). Rather than constituting harassment based upon religion, the form indicates a willingness to accommodate an employee's religious beliefs to the extent possible under the law.

Thus, Maresca does not state a hostile work environment claim.

**C.    Retaliation**

11

Maresca next alleges that after she requested her religious exemption, RUMC retaliated by terminating her, locking her out of her e-mail, denying her "a verbal conversation regarding the future of [her] job and pension," denying her a termination letter, and requiring her to pick up her final paycheck in person, while waiting outside of the hospital. *Id.* at 8-9, 11.

For a Title VII retaliation claim to survive a motion to dismiss, a plaintiff must plausibly allege that "(1) defendants discriminated — or took an adverse employment action against [her], (2) because [she] has opposed any unlawful employment practice." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015). "[A]n adverse employment action is any action that could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Id.* Such an action need not necessarily "affect the terms and conditions of employment." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006).

As to causation, "a plaintiff must plausibly plead a connection between the act and [her] engagement in protected activity." *Vega*, 801 F.3d at 90. The Supreme Court has held that retaliation claims under Title VII "must be proved according to traditional principles of but-for causation," which "requires proof that the unlawful retaliation would not have

12

occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). "But-for causation does not, however, require proof that retaliation was the only cause of the employer's action, but only that the adverse action would not have occurred in the absence of the retaliatory motive." *Vega*, 801 F.3d at 91.

The parties do not dispute that Maresca engaged in protected activity when she sought a religious exemption to the Mandate and complained that the required questionnaire regarding her religion was discriminatory. Am. Compl. 14; Def.'s Mot. to Dismiss 15, ECF No. 16-7. Still, most of the actions that Maresca calls retaliatory do not qualify as adverse employment actions.

Several of the allegations at issue — like cutting off an email account and requiring the return of an identification badge — simply describe the normal incidents of termination. *See Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 466-67 (2d Cir. 1997) ("[T]he loss of an office and phone by an employee who has already been informed of a termination decision . . . does not, in and of itself, amount to adverse employment action."). Nor does the denial of a "verbal conversation regarding the future of [her] job," as Maresca claims, qualify. Am. Compl. 11. And "trouble collecting a

13

paycheck, while an inconvenience, is not an adverse employment action." *Lawrence v. State Univ. of N.Y.*, No. 01-CV-7395, 2002 WL 31812700, at *8 (S.D.N.Y. Dec. 12, 2002). Therefore, none of these actions can form the basis of a Title VII retaliation claim.

Maresca also alleges that the hospital's denial of a termination letter functioned as a "denial of unemployment" benefits. Am. Compl. 9. She asserts that had she received such a letter, she would have been eligible for unemployment benefits, instead of being adjudicated ineligible as an employee who "quit." *Id.* But it was the state — not RUMC — that denied her unemployment benefits, and Maresca has not alleged that RUMC opposed her benefits application. *Cf. Naula v. N.Y.C. Dep't of Educ.*, No. 24-CV-333, 2025 WL 948100, at *6 (E.D.N.Y. Mar. 30, 2025) (identifying cases where opposition to unemployment benefits may constitute an adverse employment action).

Moreover, the failure to provide a termination letter cannot constitute adverse employment action because that action could not have caused Maresca harm. The Supreme Court has explained that Title VII only protects "retaliation that produces an injury or harm." *White*, 548 U.S. at 67. In New York, nurses declining a mandatory vaccination were ineligible for unemployment regardless of whether they "quit" or were fired, absent a valid request for accommodation. *See*

14

*Unemployment Insurance FAQs* ("Workers in a healthcare facility, nursing home, or school who voluntarily quit or are terminated for refusing an employer-mandated vaccination will be ineligible for UI absent a valid request for accommodation . . . ."); ECF No. 16-4, at 28 (applying this policy to Maresca). For Maresca to have been eligible for unemployment, then, it was immaterial whether she quit or was terminated. Rather, it would have been incumbent on Maresca — not her employer — to establish that she had made a "valid request" for accommodation. Maresca has not alleged that a termination letter was necessary for her to make this showing. For both of these reasons, withholding the letter would not "dissuade a reasonable worker from" engaging in any protected activity. *White*, 548 U.S. at 57.

Termination, of course, is an adverse employment action. *See, e.g.*, *Shultz v. Congregation Shearith Isr. of City of N.Y.*, 867 F.3d 298, 304-05 (2d Cir. 2017). However, Maresca's protected activity was not a but-for cause of that termination. The Mandate was directed at all "covered personnel," rather than at Maresca because she engaged in protected religious activity. N.Y. Comp. Codes R. & Regs. tit. 10, § 2.61 (Aug. 26, 2021); *see We the Patriots*, 17 F.4th at 281. And RUMC terminated Maresca in compliance with the Mandate. Courts have consistently held that termination for refusing a COVID-19 vaccine on religious grounds cannot form the

15

basis of a Title VII retaliation claim. *See, e.g.*, *Russo v. Patchogue-Medford Sch. Dist.*, No. 22-CV-1569, 2024 WL 149131, at *4 (E.D.N.Y. Jan 12, 2024) (plaintiff's "own allegations . . . show that [she] was placed on leave without pay because she refused to receive COVID-19 tests or a vaccination — not because of [the employer's] alleged animus towards her religious beliefs"), *aff'd,* 129 F.4th 182 (2d Cir. 2025); *Moore v. Montefiore Med. Ctr.*, No. 22-CV-10242, 2023 WL 7280476, at *7 (S.D.N.Y. Nov. 3, 2023) (plaintiff was terminated because she did not receive the COVID-19 vaccine, not because she submitted a religious exemption request form). Maresca's claim is analogous. Thus, she has not stated a claim for Title VII retaliation.

**D.   New York Labor Law**

While Maresca does not state a Title VII retaliation claim related to her final paycheck, the Court also construes this claim pursuant to New York Labor Law § 191(3). The statute provides that "[i]f employment is terminated, the employer shall pay the wages not later than the regular pay day for the pay period during which the termination occurred." N.Y. Lab. Law § 191(3) (McKinney 2025). As all federal claims are dismissed, the Court declines supplemental jurisdiction over the New York Labor Law claim without prejudice to Maresca bringing it in state court. *See* 28 U.S.C. § 1367.

16

## IV. Conclusion

For the foregoing reasons, the motion to dismiss is granted. The Clerk of Court is respectfully directed to mail a copy of this order to Maresca, to note the mailing on the docket, to enter judgment, and to close the case.

SO ORDERED.

    /s/ Eric Komitee
ERIC KOMITEE
United States District Judge

Dated:   August 28, 2025
         Brooklyn, New York